**Edith KRISTELLER, Plaintiff,**

**v.**

**A.H. ROBINS, INC., Defendant.**

**No. 81-CV-180.**

United States District Court,
N.D. New York.

April 5, 1983.

[redacted]

[redacted]

[redacted]

[redacted]

---

Bixler & Stumbar, Ithaca, N.Y., for plaintiff; L. Richard Stumbar, Ithaca, N.Y., of counsel.

Carter, Conboy, Bardwell, Case & Blackmore, Albany, N.Y., for defendant; Diane Bresee Mayberger, Albany, N.Y., of counsel.

## MEMORANDUM-DECISION AND ORDER

McCURN, District Judge.

This matter was before the Court on the defendant's motion for summary judgment and the plaintiff's cross motion to amend her complaint. After oral argument, plaintiff's cross motion was granted and the Court reserved on defendant's motion. Thereafter, defendant made an identical summary judgment motion against plaintiff's amended complaint. For the reasons set forth below, defendant's motions are denied.

*Background*

Sometime in December, 1971, plaintiff had a Dalkon Shield inserted in her by her physician. The Dalkon Shield is an intrauterine device manufactured by the defendant, A.H. Robins. On or about March 1980, plaintiff became seriously ill with a pelvic inflammation. She was admitted to the hospital on March 25, and the Dalkon Shield was removed. On May 5, 1980, plaintiff underwent a total abdominal hysterectomy, a bilateral salpingo-oophorectomy and lysis of multiple adhesions.

Plaintiff contends that the Dalkon Shield caused her pelvic inflammatory disease, which necessitated the May 5th surgery. She, therefore, filed suit on February 25, 1981, against A.H. Robins for: negligent manufacture and design of the IUD; breach of express and implied warranties;

conspiracy to violate 21 U.S.C. § 352 and 15 U.S.C. § 52; punitive damages; and strict products liability. By Order dated April 28, 1981, Judge Foley granted a motion by defendant to dismiss plaintiff's claims sounding in breach of implied and express warranty, punitive damages and conspiracy, on the grounds that these claims failed to state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). Defendant addressed its present motions for summary judgment against plaintiff's claims of strict products liability and negligence. Plaintiff's amended complaint asserts causes of action for fraud and misrepresentation; there is no motion pending as to these newly asserted claims.

*Discussion*

The action before the Court is one grounded in diversity, and as such, is governed by the law of New York. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Defendant argues that plaintiff's claims for negligence and strict products liability must be dismissed as time barred by the applicable New York Statute of Limitations. *See Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980). This Court does not agree.

In New York cases, claims for negligence and strict products liability must be commenced within three years from the date of injury. N.Y.Civ.Prac. § 214(5); *Victorson v. Bock Laundry Machine Co.,* 37 N.Y.2d 395, 335 N.E.2d 275, 373 N.Y.S. 39 (1975); *City of Buffalo v. Maggio,* 21 N.Y.2d 1017, 238 N.E.2d 494, 291 N.Y.S. 1 (1968). The question presented by this case is: when did the plaintiff's injury occur? Defendant argues that the date of insertion of the IUD is the date of injury. *See Van Buren v. A.H. Robins,* No. 267 (Sup.Ct. filed Feb. 5, 1982); *Borelli v. A.H. Robins,* No. 212/77 (Sup.Ct., filed April 25, 1980). Plaintiff asserts that the injury did not occur until the plaintiff contracted the pelvic inflammatory disease. *See Klein v. Dow Corning Corp.,* 661 F.2d 998 (2d Cir.1981); *Murphy v. St. Charles Hospital,* 35 A.D.2d 64, 312 N.Y. S.2d 978 (2d Dep't 1970). It is the opinion of this Court that, based upon the evidence currently in the record, the plaintiff's injury occurred when she contracted the pelvic inflammatory disease.

The Second Circuit case of *Klein v. Dow* is particularly relevant to this Court's inquiry. There a woman sued the manufacturer of mammary implants which ruptured fourteen years after they were surgically implanted in her. The district court dismissed her complaint as time barred because it was not filed within three years of the implantation of the devices, the date set by the district court as the date of the injury.

The Second Circuit reversed, noting that there was no proof in the record that the injury occurred upon implantation and that the defendant did not allege that injury occurred upon implantation. The Court distinguished the mammary implant case from cases dealing with asbestos inhalation and chemical injections, *see Steinhardt v. Johns-Mansville Corp.,* 54 N.Y.2d 1008, 430 N.E.2d 1297, 446 N.Y.S.2d 244 (1981); *Thornton v. Roosevelt Hospital,* 47 N.Y.2d 780, 391 N.E.2d 1002, 417 N.Y.S.2d 920 (1979), where the New York Court of Appeals has held that injection/inhalation and injury are concurrent. The Court in *Klein* stated that there was no proof before the Court that plaintiff suffered injury upon implantation. That being the case, there was nothing to contradict plaintiff's assertion that she was not injured by the implants prior to their rupture. 661 F.2d at 999.

This is precisely the situation present in the case at bar. Defendant has offered no proof that insertion and injury were concurrent. Rather, it cites the Court to several New York Supreme Court cases which viewed the *Steinhardt* and *Thornton* cases as dispositive of the question, holding that injury occurred upon insertion of the IUD. *Van Buren; Borelli.* Thus, defendant argues that the law of the state is that injury occurred upon insertion. What defendant does not mention in its brief, however, is that not every New York Court faced with this question has held that injury occurs upon insertion. *See Klein,* 661 F.2d at 999,

n. 2. Therefore, the Court does not agree with defendant that there is a "law of the case" as pertains to the fixing of the time of injury when infections are caused by intrauterine devices. Therefore, the Court must look to what evidence is in the record indicating the time of injury.

Plaintiff asserts in her answers to defendant's interrogatories that the onset of her pelvic inflammation was in March of 1980. In addition, she states in an affidavit to this Court that she had a gynecological check up in January of 1980, and that no diagnosis of infection was made at that time. She, therefore, asserts that she was first injured by the intrauterine device when she suffered the infection in March 1980. She filed suit in this Court on February 25, 1981, thus making her suit timely if the date of injury is placed in March of 1980.

Defendant has offered no proof, scientific or otherwise, that the Dalkon Shield injured plaintiff prior to the onset of the infection. Perhaps defendant can make out such a case at trial. At this time, however, the Court must accept plaintiff's uncontradicted assertions that the IUD first injured her in March of 1980. Suit was, therefore, timely filed.

Since the Court heard oral argument on this motion, the Second Department of the Appellate Division has handed down a decision which supports this Court's decision. *Lindsay v. A.H. Robins,* 91 A.D.2d 150, 458 N.Y.S.2d 602 (2nd Dep't 1983). There the appellate court reversed the trial court's determination that the injury occurred upon insertion of the IUD. The court first analyzed the inhalation-injection cases, concluding that those cases

> stand primarily for the proposition that when a harmful substance enters the body, or is taken internally, the injury occurs immediately . . . . [T]he injection or inhalation of the harmful substance into the body constitutes the actionable 'invasion of the body' which *immediately* initiates the infection or disease process for which a negligent defendant is responsible.

Indeed, as pointed out above, the Court of Appeals has explicitly declared that those cases are based upon an assumption, to wit, that the harmful substance taken into the body by inhalation or injection acts immediately upon the tissues of the body and causes injury immediately.

But, that assumption is not valid or applicable to the case before us. It cannot be said that there was injury at the time of insertion of the shield because there is no basis in reason or in the record before us upon which to predicate an assumption that any infection or disease process began immediately upon insertion of the shield. Unlike the harmful dust and chemical compounds, which were harmful in their very nature, i.e., they were the 'beasts themselves', the shield was not, in and of itself, harmful.

*Id.,* 458 N.Y.S.2d at 606 (emphasis in original).

This is precisely the determination this Court has made. Based on the current record it cannot be said that plaintiff suffered any form of injury upon the initial insertion of the device.

Accordingly, defendant's motions for summary judgment are denied.

IT IS SO ORDERED.